

FILED

JUNE 2, 2016

IN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 9:24 AM

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT COOKEVILLE

| | | |
|---|---|---|
| Christopher Miller | ) | Docket No.: 2015-04-0196 |
| Employee, | ) | |
| v. | ) | State File Number: 54638-2015 |
| TRW Automotive U.S., LLC | ) | |
| Employer. | ) | Judge Robert Durham |

---

### EXPEDITED HEARING ORDER DENYING MEDICAL BENEFITS

---

THIS CAUSE came before the undersigned Workers' Compensation Judge on May 17, 2016, upon the Request for Expedited Hearing (REH) filed by the employee, Christopher Miller, on January 20, 2016, pursuant to Tennessee Code Annotated section 50-6-239 (2015) to determine if the employer, TRW Automotive U.S., LLC, is obligated to pay for Mr. Miller's emergency room treatment incurred on July 9, 2014.[1]

The dispositive issue is whether Mr. Miller sustained an injury to his left forearm that arose primarily out of and in the course and scope of her employment with TRW.[2] A secondary issue is whether Mr. Miller was justified in seeking unauthorized emergency room treatment on July 9, 2014, and is thus entitled to reimbursement for that expense. The Court finds the evidence submitted by Mr. Miller is sufficient to establish that upon providing notice on July 9, 2014, he would have been entitled to a panel of authorized physicians from which he could have chosen an authorized physician for evaluation, and if necessary, treatment of his alleged work-related injury. However, the evidence is insufficient at this time to establish he is likely to prevail at a hearing on the merits regarding the need for emergency treatment or the reasonableness and necessity of the expenses incurred on July 9, 2014.

---

[1] At the hearing, Mr. Miller stipulated the only medical benefit requested was reimbursement for the emergency room visit.

[2] Additional information regarding the technical record and exhibits is attached to this Order as an Appendix.

1

## History of Claim

Mr. Miller is a thirty-seven-year-old resident of Cumberland County, Tennessee, who worked on a production line for TRW. (T.R. 1 at 1.) Mr. Miller testified his primary duty involved operating a machine referred to as a "baronizer," which he described as being similar to a drill press. He also frequently operated a "wash machine," located next to the "baronizer" station, which cleaned lubricant from parts using caustic cleaning fluids. The operation of both machines required him to wear heavy gloves.

Mr. Miller further testified he developed a rash on his left forearm in December 2013, which he believed was causally related to exposure to chemicals while working at TRW. The only place he developed the rash was on his forearm, which was the only part of his body regularly exposed to the chemicals. Mr. Miller stated the rash was only a minor irritation at first, but as it lingered, he reported it to Kathy Paris, TRW's workers' compensation claim administrator, in June 2014. Ms. Paris did not provide a panel of physicians at that time.

Mr. Miller stated he again spoke with Ms. Paris regarding the rash at the beginning of his shift on July 9. He testified she indicated he could seek medical attention, but produced some hydrocortisone cream and asked him to try it for a few days to see if it helped. He agreed to do so.

Mr. Miller testified that on the evening of July 9, his co-worker, Kelvin Jumper, attempted to get his attention to assist him with the wash machine to make sure he correctly filled it with washing fluid. Mr. Miller further claimed that when he did not turn his attention from his station, Mr. Jumper grabbed him by the left forearm with a gloved hand covered in washing fluid. Mr. Miller averred he felt immediate and intense pain in his forearm that he had not previously experienced.

Mr. Miller testified he went to his line supervisor, Justin Harpe, and told him that Mr. Jumper grabbed him with a glove covered in cleaning fluid and requested Mr. Harpe go with him to the emergency room. Mr. Harpe told Mr. Miller he could not do so without first talking with Ms. Paris. He called Ms. Paris on her personal phone and informed her that Mr. Miller's rash appeared minor to him, but Mr. Miller insisted on seeking immediate medical attention. Mr. Miller testified Mr. Harpe refused to let him talk with Ms. Paris; however, Ms. Paris testified she tried to talk to him, but he refused to take the telephone. In any event, Mr. Miller insisted on going to the emergency room that night despite the fact that Mr. Harpe told him TRW would not authorize the visit. After arriving at University Medical Center (UMC), the hospital called for authorization, which TRW refused to give. Mr. Miller submitted the expense on his health insurance.

The physician chart from UMC noted Mr. Miller claimed to suffer from a chemical burn with the symptoms beginning gradually approximately one month earlier.

2

(Ex. 5 at 2.) The record states, "Pt. states that he is being repeatedly exposed to potassium hydroxide at work. The chemical gets sprayed on his skin and he is having a burning type reaction. Pt. c/o ongoing rash with burning sensation when exposed to water or creams." *Id.* On examination, a physician's assistant noted a "moderate rash" and described it as "erythematous, excoriated, nonspecific contact dermatitis on the palmar aspect of left forearm and dorsal aspect of left forearm." *Id.* at 3. The hospital provided Mr. Miller with a corticosteroid injection and discharged him from care. *Id.* at 4. Although UMC's medical bill was made an exhibit for identification purposes, Mr. Miller did not offer it into evidence.

Mr. Miller claimed that on July 10, the rash developed bleeding sores. At the hearing, he introduced a photograph of his left forearm he testified he took on July 10. (Ex. 12.) He also completed an incident report for TRW that day. (Ex. 18.) The report asked that he describe the accident in detail. Although the designated box contained ample space for a detailed explanation, Mr. Miller simply wrote, "Put hydrocortisone on an [sic] rash area that has resulted from continued exposure to KHO." *Id.* There is no mention of Mr. Jumper grabbing his arm. On examination, Mr. Miller testified a page was missing from the report.

Mr. Miller also offered a TOSHA Citation and Notification of Penalty, issued after he requested TOSHA conduct an investigation of TRW. (Ex. 6 at 3.)[3] The Citation noted that, according to the material data sheet for the product used in the parts washer, it could cause irritation of the skin and eyes. *Id.* at 9. TOSHA proposed issuing a fine in part because TRW did not provide gloves, goggles, or facilities to drench the eyes and body for employees using the parts washer. *Id.*

On cross-examination, Mr. Miller admitted he had wanted to transfer to another workstation for some time prior to his alleged injury, but TRW had given the job to another employee. He further admitted he felt TRW's decision showed favoritism to the other employee. Mr. Miller admitted occasionally sleeping in his van with his dog, but denied he exhibited poor hygiene. Mr. Miller testified he only returned to work on the "baronizer" on one occasion following this incident, but when he did so, he again developed a rash on his left forearm.

Mr. Harpe testified on behalf of TRW pursuant to subpoena. He testified he had not worked for TRW for approximately a year and a half. According to Mr. Harpe, on July 9, 2014, Mr. Miller alleged Mr. Jumper improperly used the wash machine and sprayed him with cleaning fluid. (Ex. 11 at 1.) When Mr. Miller demanded to go to the emergency room, Mr. Harpe examined Mr. Miller's rash. He described it as being very red, but minor in nature. He did not feel it warranted emergency treatment, but called

---

[3] TRW objected to the TOSHA report at the hearing, and the Court took its objection under advisement. Upon review, the Court finds the report constitutes a hearsay exception pursuant to Rule 803(8) of the Tennessee Rules of Evidence (2015). Therefore, TRW's objection is overruled.

Ms. Paris to advise her of the situation. He then relayed to Mr. Miller that TRW would not authorize emergency room treatment, but he could come in the next day and obtain a physician from a panel. Mr. Miller refused to wait and left the factory.

Mr. Harpe testified Mr. Miller never told him Mr. Jumper grabbed him with a gloved hand covered in cleaning solution, and that the first time he ever heard this allegation was when TRW's counsel asked him about it on examination. He further testified Mr. Miller exhibited poor hygiene while at work.

Ms. Paris also testified for TRW. She testified that if Mr. Miller had come in to work on July 10, she would have provided him with a panel from which he could have chosen an authorized physician and received treatment that day, but none of the doctors on the panel was available on the evening of July 9. She also testified Mr. Miller never told her Mr. Jumper grabbed him by the forearm with a glove covered in cleaning fluid, and the first time she heard this account was at the hearing. She further testified TRW had received several complaints from co-workers regarding Mr. Miller's hygiene.

In addition to these witnesses, TRW also submitted the affidavits of Kelvin Jumper and Adam Stevens. Mr. Jumper stated the washing fluid never sprayed or got close to Mr. Miller. He further testified he never developed a rash from working with the fluid. He also testified as to Mr. Miller's poor hygiene. Mr. Stevens, Employee Relations Manager for TRW, cited several instances regarding Mr. Miller's hygiene.

Finally, TRW submitted the First Report of Injury, dated July 11, 2014, which describes the alleged injury as, "performing regular duties, left arm started burning and turning red." (Ex. 19.)

Mr. Miller filed a Petition for Benefit Determination seeking medical benefits on December 9, 2015. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice on January 7, 2016. Mr. Miller filed an REH on January 20, 2016. In the affidavit attached to the REH, Mr. Miller did not allege Mr. Jumper grabbed his forearm with a gloved hand covered in washing fluid. (Ex. 7.) The Court heard the matter on May 17, 2016.

At the Expedited Hearing, Mr. Miller asserted he sustained a job-related injury when exposed to caustic cleaning fluids while working at TRW. He further contended the exposure was sufficiently serious to warrant unauthorized emergency medical treatment. Thus, he is entitled to reimbursement for medical expenses incurred during his emergency room visit on July 9, 2014. TRW countered that Mr. Miller failed to establish a causal connection between his rash and his exposure to chemicals at TRW; furthermore, even if a causal connection did exist, Mr. Miller failed to establish that the unauthorized emergent treatment he received was reasonable or necessary. As a result, TRW argued the Court should deny Mr. Miller's request for reimbursement.

4

**Findings of Fact and Conclusions of Law**

The Court considers the following legal principles in reaching its conclusions in this matter. The Court must interpret the Workers' Compensation Law fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2015). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015).

Mr. Miller need not prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, Mr. Miller has the burden to come forward with sufficient evidence from which the trial court can determine he is likely to prevail at a hearing on the merits. *Id.* This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.,* No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

TRW asserts Mr. Miller failed to produce sufficient evidence to show he is likely to prevail on the issue of causation regarding his alleged work-related rash. In order to establish causation, an employee must prove "to a reasonable degree of medical certainty that [the injury] contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2015). The term "reasonable degree of medical certainty" means that, "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D) (2015). Thus, causation must be established by expert medical testimony, and it must be more than "speculation or possibility" on the part of the doctor. *Id.*

In this instance, the Court finds Mr. Miller failed to produce any expert medical evidence linking his rash to his employment with TRW. The medical records provided diagnose Mr. Miller with contact dermatitis, but fail to give any opinion as to causation other than a recitation of his history. (Ex. 5 at 2.) As a result, he has provided insufficient evidence to establish he is likely to prevail on the issue of compensability.

However, an employee does not have to prove compensability in order to establish the employer is obligated to provide a panel of physicians from which he may choose an

authorized physician. *McCord, supra,* at \*16, 17. In *McCord,* the Workers' Compensation Appeals Board found:

> [W]hether the alleged work accident resulted in a compensable injury has yet to be determined. Therefore, while Employee has not proven by a preponderance of the evidence that she suffered an injury arising primarily out of and in the course and scope of employment, she has satisfied her burden at this interlocutory stage to support an Order compelling Employer to provide a panel of physicians.

*Id.* Thus, the question becomes whether Mr. Miller provided sufficient evidence to satisfy his "burden at this interlocutory stage" that he was entitled to a panel of physicians on July 9, 2014. *Id.* at 17.

The administrative rules governing an employer's obligation to provide a panel state, "[u]pon notice of any workplace injury, other than a minor injury for which no person could reasonably believe requires treatment from a physician, the employer shall immediately provide the injured employee a panel of physicians that meets the statutory requirements for treatment of the injury." Tenn. Comp. R. & Regs. 0800-02-01-.25(1) (2015). An employer who fails to comply with this rule without good cause could be assessed a civil penalty of up to $5,000. *Id.*

The Court finds Mr. Miller's job with TRW exposed him to caustic chemicals without adequate protection, as noted in the TOSHA citation. (Ex. 6.) Furthermore, it is undisputed that 1) Mr. Miller had a rash on the exposed area of his left forearm, 2) he did not have a rash anywhere else on his body and, 3) he did not have a rash prior to his employment with TRW. TRW attempted to suggest Mr. Miller's rash was caused by poor hygiene, but there is no evidence to support this assertion, and the Court is unpersuaded by TRW's argument. Therefore, the Court finds Mr. Miller provided sufficient evidence to satisfy his "burden at this interlocutory stage" that he was entitled to a panel of physicians on July 9, 2014. *Id.* at 17.

However, Mr. Miller refused to wait to choose an authorized physician from a panel offered by TRW, and instead chose to seek emergent care after Mr. Harpe explicitly informed him TRW would not authorize it. Whether an employee is justified in seeking payment for unauthorized medical expenses from an employer depends upon the circumstances of each case. *Buchanan v. Mission Ins. Co.,* 713 S.W.2d 654, 656 (Tenn. 1986).[4] In *Buchanan,* the Supreme Court concluded that the statute:

---

[4] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd.

[M]akes it clear that the intent [of the Legislature] . . . was for the employee to certainly do no less than consult his employer before incurring the expenses called for by that statute if the employee expects the employer to pay for it. The opposite would seem to be against public policy.

*Id.* at 657. In addition, the Tennessee Supreme Court has held that when an employee receives medical care for a work-related injury that the employer did not authorize, the employee must establish the necessity and reasonableness of the charges before the employer is responsible. *Moore v. Town of Collierville,* 124 S.W.3d 93, 98 (Tenn. 2004).

In this matter, Mr. Miller attempted to justify his need for emergent care by claiming Mr. Jumper grabbed his left forearm with a glove covered in cleaning fluid, thus severely exacerbating his symptoms. However, given the entire record before it, the Court finds Mr. Miller is not credible regarding this account. Mr. Harpe and Ms. Paris both testified the first time they heard this particular account was at the hearing on May 17. The accident report completed by Mr. Miller on July 10 does not describe any incident involving Mr. Jumper, and while Mr. Miller claims there is a second page, he did not produce it. The Court finds the form made an exhibit appears to be complete for all intents and purposes. (Ex. 18.)

Furthermore, neither the medical records, nor Mr. Jumper's affidavit or Mr. Miller's affidavit, contain any reference to Mr. Jumper grabbing Mr. Miller's arm. Mr. Miller's account is entirely uncorroborated by any of the evidence submitted. As a result, the Court finds the weight of the evidence does not support Mr. Miller's description of Mr. Jumper grabbing his arm and exacerbating his symptoms.

With that in mind, the question remains whether it was reasonable or necessary for Mr. Miller to seek unauthorized emergent treatment on July 9, 2014. The Court finds Mr. Miller had suffered from the rash for at least several weeks, if not months. The rash was limited to his left forearm. He agreed to try hydrocortisone cream to treat the rash before his shift began. Mr. Harpe testified that while the area was red, the rash appeared to be mild. Ms. Paris testified that if Mr. Miller had come to her office on July 10, he could have seen an authorized physician chosen from TRW's panel that day.

At the emergency room, UMC did not perform any tests regarding the rash. They discharged him from the hospital that same evening after providing pain medication and steroids, and told him to follow-up with his primary care physician in two to three days. Finally, Mr. Miller failed to enter the expenses from this emergency room visit into evidence.

LEXIS 6, *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

7

Under the circumstances, the Court finds Mr. Miller provided insufficient evidence to establish he would be likely to prevail at trial regarding the reasonableness and necessity of his emergency medical treatment on July 9, 2014. As a result, the Court denies Mr. Miller's request for reimbursement at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1.    Mr. Miller's request for reimbursement of medical expenses is denied.

2.    This matter is set for Initial Hearing/Status Conference on June 27, 2016, at 1:30 p.m. C.T.

**3.    Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

4.    For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471.

**ENTERED THIS THE 2nd DAY OF JUNE, 2016.**

**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

**Initial Hearing:**

8

**An Initial Hearing/Status Conference has been set with Judge Robert Durham, Court of Workers' Compensation Claims. You must call 615-253-0010 or toll-free at 866-689-9049 to participate in the Initial Hearing.**

**Please Note:  <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation.  All conferences are set using Central Time (CT).**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board.  To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.**  Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment.  Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service.  In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee.  The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter.  The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable.  **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal.  Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal.  The statement of the evidence must convey a complete and

accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:

1. First Report of Injury dated December 22, 2015;
2. Notice of Denial;
3. Affidavit and certified record from University Medical Center (UMC);
4. Medical expense forms from UMC (marked for I.D. only);
5. Physician Chart from UMC;
6. TOSHA report;
7. Affidavit of Christopher Miller;
8. Affidavit of Kelvin Jumper;
9. Affidavit of Adam Stevens;
10. Affidavit of Kathy Paris;
11. Affidavit of Justin Harpe;
12. Picture of Mr. Miller's left forearm;
13. Picture of barrel;
14. Picture of Mr. Miller's van;
15. Picture of Mr. Miller's van;
16. Collective pictures of Mr. Miller's van;
17. E-mail from Mr. Miller dated August 13, 2015;
18. TRW Incident Assessment Report;
19. First Report of Injury dated July 11, 2014;
20. Collective pictures of Mr. Miller's workstation.

Technical Record:

1. Petition for Benefit Determination;
2. Request for Expedited Hearing;
3. Dispute Certification Notice;
4. TRW's Motion for telephonic Expedited Hearing;
5. Order Denying TRW's Motion for telephonic hearing;
6. Pre-Hearing Order;
7. Subpoena for Justin Harpe;
8. Amended Order from Judge Lisa Knott dated April 1, 2015;
9. Order Dismissing Request for Assistance.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Medical Benefits was sent to the following recipients by the following methods of service on this the 2nd day of June, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Christopher Miller | X | | X | 318 Timothy Drive, Crossville, Tennessee 38572 Columbo76@Tamil.com |
| Lane Moore | | | X | Lane@moorerader.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov